**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES, STATE OF TEXAS, *et al* | § § § | CIVIL ACTION NO.: **19 CV 5021** |
| *ex rel.* BRIDGETTE JACOBS, | § § | |
| Plaintiffs, | § § | |
| | § | JURY DEMANDED |
| v. | § § | |
| WALGREEN COMPANY, | § § | |
| Defendant. | § § | IN CAMERA |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

Relator Bridgette Jacobs ("Relator"), for and in the name of the United States, the State of Texas, and similarly situated States, complains of and about Defendant Walgreen Company (hereinafter referred to as "Walgreens" or "Defendant"), files this Original Complaint, and will show onto the Court as follows:

### I. PARTIES

1. Relator Bridgette Jacobs is an individual residing in Fort Bend County, Texas.

2. The United States, Plaintiff, prior to the intervention of the United States Attorney, is represented by Relator, pursuant to 31 U.S.C. § 3730(b)(1) (2012).

3. The State of Texas and similarly situated States are represented by Relator, prior to the intervention of the Texas Attorney General or any counsel of the States' choosing, pursuant to Section 36.101 of the Texas Human Resources Code and similar State statutes prohibiting fraud

on State Medicaid and similar programs. TEX. HUM. RES. CODE § 36.101 (West 2019).

4. Defendant Walgreen Company is a foreign for-profit corporation incorporated in the State of Delaware and headquartered in the State of Illinois. Walgreens regularly conducts business in Harris County, Texas. Walgreens may be served with process by serving its registered agent, Corporate Service Company, at 251 Little Falls Drive, Wilmington, DE, 19808.

## II. JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs' causes of action arise under federal statutes, namely the False Claims Act, 31 U.S.C. §§ 3729-3733, as amended.

6. Additionally, this Court has supplemental jurisdiction over Plaintiffs' similar state law claims, pursuant to 28 U.S.C. § 1367, because such claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy, under Article 3 of the United States Constitution.

7. Venue is proper in the Southern District of Texas – Houston Division, pursuant to 28 U.S.C. § 1391(a), because this is the judicial district where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred.

## III. NATURE OF THE ACTION

8. This action is brought pursuant to the False Claims Act, the Texas Medicaid Fraud Prevention Act, and similar legislation of the other States, on the grounds that Defendant unlawfully and knowingly presented, or caused to be presented, false or fraudulent claims for payment to the United States, the State of Texas, under the Texas Medicaid program, and similarly situated States, under their respective Medicaid programs, in violation of said statutes. 31 U.S.C. § 3729(a)(1)(A), TEX. HUM. RES. CODE § 36.002. Defendant further knowingly made, used, and

caused to be made or used, false records or statements material to its false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B), TEX. HUM. RES. CODE § 36.002(1)-(2).

## IV. FACTS

9. Relator is a licensed pharmacist and has been licensed in the State of Texas for over twenty-nine (29) years.

10. Relator has been in the employ of Walgreens since November 2002.

11. All statements of fact contained in this Complaint are within Relator's personal knowledge.

12. Throughout Relator's tenure, Walgreens has been repeatedly, persistently, and openly submitting incorrect and fraudulent requests for reimbursement to Medicare and Medicaid programs ("Programs"), from requesting that the Programs pay for the prescription medication under the name of a physician that was not treating the patient requesting a prescription to be filled, to dispensing incorrect quantities of drugs billed in the reimbursement claims submitted to the Programs, to never reversing the charges to the Programs for wrongly dispensed prescription drugs.

13. Walgreens uses an electronic system to manage the incoming prescriptions from licensed physicians.

14. When a prescription is filled by Walgreens wrongly, a mistake is entered manually or automatically into the system.

15. For internal reporting purposes, a mistake on Walgreens electronic systems needs to be resolved or "closed" within the prescribed timeframe.

16. Federal and State law also requires that Walgreens would reverse the mistakenly billed charges to the Programs and resubmit requests for reimbursement with the correct

medication name, correct medication amount and quantity, and correct physician's name.

17. While Walgreens would, in most cases, eventually dispense correct medications to the patients, Walgreens would habitually not reverse the charges to the Programs and maintain the claims on the basis of the incorrect bills.

18. Walgreens would further "close" the mistakes on its internal systems, after the mistakes are discovered, but never make the "closed" mistakes known to the Programs' administrator.

19. Moreover, Walgreens would regularly, persistently, and habitually delete wrongly dispensed prescriptions from patients' profiles on its internal systems, without reporting a correction of its own errors to the Programs.

20. In June 2019, while reviewing a refill request, Relator noticed that the prescription on the request was incorrectly typed and dispensed.

21. HCTZ 25mg tablets (diuretic) was what the doctor prescribed to the patient, but Hydralazine 25mg tablets (vasodilator) was typed into Walgreens systems and dispensed to the patient.

22. The initial prescription for the patient was dispensed in January 2019 and refilled each month for the next four months incorrectly, to a total of 5 months, without any pharmacist noticing the medication error.

23. The doctor had clearly typed that HCTZ 25mg was to be dispensed.

24. The patient was contacted by the pharmacy but did not seem to have understood that he had been taking the wrong medication for five months, because he barely spoke English and was elderly.

25. The Walgreens pharmacy in question informed the prescribing physician of the

dispensing error, and the physician instructed to re-dispense the drug as prescribed, which was eventually done.

26. Hydralazine 25mg was billed to and paid for by Medicare and is not, to Relator's knowledge, a generic or other substitute for HCTZ.

27. The mistake was either "closed" on Walgreens' internal systems after the conversation with the prescribing physician or never documented therein as such at all.

28. To the best of Relator's knowledge, no reversal was done by Walgreens of prior charges to the Programs.

29. On September 5, 2019, Relator received a call from a very upset nurse, asking Relator to look at a patient's medication order from August 2019 and to tell the nurse what the order was written for.

30. Relator, having reviewed the prescription, immediately told the nurse that the order was for Luvox 150mg, which is a medication that treats major depressive disorders.

31. The nurse confirmed that the prescription was correct.

32. The nurse, however, asked Relator why the pharmacist at Walgreens dispensed Levothyroxine 150mg, which is a thyroid medication, to the patient.

33. The nurse told Relator that the patient was new to the nurse's facility and was in a desperate need to be timely put on Luvox.

34. When the patient was admitted to the nurse's facility, he was told to bring all his new medications for a check, which uncovered the incorrect prescription.

35. The nurse said she obtained permission from her supervisor to take the patient back to the Walgreens pharmacy, because she thought the medication quantity was incorrect.

36. The nurse asked the pharmacist on duty to check the original order and make sure

everything was correct.

37. Instead of verifying the prescription, the pharmacist loaned the patient more Levothyroxine 150mg and requested a refill approval for more Levothyroxine 150mg.

38. Relator's review of patient's file at Walgreens revealed that the patient took Levothyroxine, one tablet twice a day, for a month, instead of Luvox.

39. Levothyroxine was billed to the Programs.

40. In August 2019, Relator noticed that Walgreens was habitually dispensing Fluticasone Nasal Spray (Rx), qty size 16, a medication that is covered by Medicaid, instead of the Flonase Allergy Spray, qty size 6.6 or 15.8 (both being over-the-counter and not covered by Medicaid), without contacting the prescribing physicians for approval to dispense a different quantity of the medication or a substitute medication, as required by the Programs.

41. Relator reported the substitution practices to the Medicare Fraud Hotline, with Relator's report being assigned a reference no. 2019-271906.

42. There is an ongoing fraud on the Programs, with Walgreens wrongly dispensing Diclofenac 1% topical gel to the Medicare age group for joint pain relief.

43. Relator noticed that prescribing physicians would habitually write only the frequency of application of Diclofenac, but not the correct quantity to be dispensed and applied.

44. It is the pharmacist's duty to verify the correct number of tubes of the medication to be dispensed to patients.

45. Walgreens would habitually dispense a number of tubes the specific pharmacist would deem fit to patients, without verifications, and fraudulently bill the number dispensed to the Programs.

46. Relator witnessed Walgreens pharmacy manager instruct technicians under their

supervision to add mosquito repellants to the patients' medicine bags when patients would be getting prenatal vitamins, on the premise that the prescription count was down.

47. The manager also instructed technicians to remind patients that the repellent spray was free and that they could get a new can every 15 days.

48. In fact, the mosquito repellent spray in question is not free, but simply free to the patients, with Medicaid footing the bill in most cases, without any justification or need.

49. Relator also noticed an ongoing issue with Walgreens wrongly dispensing Pedialyte Liquid.

50. Referring physicians would routinely send e-prescriptions saying "Dispense Pedialyte x2ml," without specifying the volume of the bottle or the correct quantity of medication to dispense.

51. In order to correctly bill the Programs, Walgreens pharmacists would have to call the physicians and verify the quantity of the medication.

52. Instead, pharmacists would routinely dispense two 1000ml bottles to patients and bill the Programs for them, without contacting physicians first.

53. Earlier this year, an infant patient was prescribed a certain quantity of antibiotics by their physician.

54. Walgreens dispensed the amount that did not match the prescription and billed the Programs for the price of the amount dispensed.

55. After the infant patient's parents informed Walgreens of its mistake, one of the parents came into the Walgreens pharmacy to receive the correct amount of the prescribed medicine.

56. The pharmacist on duty deleted a prior, incorrect prescription from the Walgreens

internal system and then simply created a new prescription for the full and correct amount of medication, while dispensing only the amount of medication missing from the previous order to match the prescription, with Walgreens again billing the Programs for the medicine.

57. The above are just very few examples of a nationwide and entrenched scheme to defraud the Programs.

58. Relator brought all of the above and many other matters to the attention of Walgreens, but nothing was done.

59. To the opposite, Walgreens attempted and attempts to cover up every single statutory violation and gets rid of the inconvenient employees that comply with the statute and report the errors and billing deficiencies.

60. Relator's colleagues were threatened by Walgreens with termination if they made or reported errors with dispensing or accounting for medications that are billed to the Programs.

61. A pharmacy manager at one of the Walgreens locations was terminated by Walgreens after she reported mistakes uncovered in the store under her supervision.

62. The terminated pharmacy manager uncovered an estimated total of 50 mistakes in a matter of weeks, with all 50 made in the preceding year.

### V. SECTION 3729(a)(1)(A) FRAUD ON MEDICARE

63. Relator incorporates all of the foregoing paragraphs as if stated herein by reference.

64. Under the False Claims Act, a person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment to the United States government, including the agency administering the Programs, is liable to the United States government. 31 U.S.C. § 3729(a)(1)(A), *see United States ex rel. Lemon v. Nurses To Go, Inc.*, 924 F.3d 155, 159 (5th Cir. 2019).

65. Walgreens has been and is presenting claims for payment to the Programs that are false and fraudulent.

66. Walgreens knew and knows of the errors on the claims it submits to the Programs, but elects not to report them, maintaining erroneous and excessive claims for reimbursement from the Programs.

67. Walgreens further tries to and does cover up the known errors on its claims for reimbursement presented to the Programs, without reversing or correcting the claims.

68. As such, Walgreens knowingly and habitually presents false and fraudulent claims and commits an offense under the False Claims Act.

## VI. SECTION 3729(a)(1)(B) MEDICARE FRAUD

69. Relator incorporates all of the foregoing paragraphs as if fully stated herein by reference.

70. Under the False Claims Act, a person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable to the United States government. 31 U.S.C. § 3729(a)(1)(B).

71. Walgreens used false and fraudulent records to submit claims for reimbursement to the Programs.

72. Walgreens knew and knows that the records were false and incorrect.

73. Instead of correcting the errors, reversing the charges, and resubmitting correct claims, Walgreens covers up the errors on its records and maintains the claims on the basis of the false records.

74. The records reflecting what, what quantity, and to whom the medications were dispensed form the basis of Walgreens' claims for reimbursement.

75. As such, Walgreens is in violation of Section 3729(a)(1)(B).

## VI. MEDICAID FRAUD

76. Relator incorporates all of the foregoing paragraphs as if fully stated herein by reference.

77. Under Texas Medicaid Fraud Prevention Act and similar statutes of the other States, a person who knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized commits an unlawful act. TEX. HUM. RES. CODE § 36.002(1).

78. Walgreens made representations and statements to the Texas Medicaid program and Medicaid programs of the other States to receive reimbursement for the disbursement of prescription medications to Medicaid patients.

79. As it was abundantly demonstrated above, many of those representations and statements are known to Walgreens to be incorrect and false.

80. The said statements and representations form the basis of Walgreens' Medicaid reimbursement claims.

81. The statements and representations allowed and still allow Walgreens to receive payments and benefits that are not authorized or that are significantly in excess of what is authorized by the programs.

82. Therefore, Walgreens is committing fraud on the Texas Medicaid program and similar Medicaid programs of other States.

## VII. PRAYER

In the light of everything set forth above, Relator respectfully asks that Defendant be cited

to appear and answer herein and that, at final trial, Plaintiffs have judgment against Defendant for:

a. All damages to which Plaintiffs may be entitled pursuant to this Original Complaint or any amendments hereto;

b. A civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, per each violation of the False Claims Act;

c. Three times the amount of damages that the federal government has sustained because of the unlawful acts of Defendant;

d. Reasonable attorneys' fees, as allowed by applicable law (with conditional awards in the event of appeal);

e. Pre-judgment and post-judgment interest until paid at the highest rate permitted by law;

g. Costs of court; and

h. Such other and further relief, at law, whether State or federal, or in equity, to which Plaintiffs may be justly entitled.

Relator further respectfully requests that Relator be granted an award within the limits and as permitted under 31 U.S.C. §3730(d), Section 360.110 of the Texas Human Resources Code, and the laws of the similarly situated States on whose Medicaid programs Defendant committed fraud.

Respectfully submitted,

_____
Alfonso Kennard, Jr.
Texas Bar No.: 24036888
Southern District No: 713316
2603 Augusta Dr., Suite 1450
Houston, TX  77057
Telephone No.: (713) 742-0900
Fax No.: (713) 742-0951
E-Mail: Alfonso.Kennard@kennardlaw.com
**ATTORNEY-IN-CHARGE FOR RELATOR**